UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SHAWN MACIEL,

    Petitioner,

v.                            Case No: 5:12-cv-39-Oc-29PRL

WARDEN, FCC COLEMAN - USP I,

    Respondent.
_____

**OPINION AND ORDER**

    Shawn Maciel ("Petitioner") initiated this action *pro se* by filing a petition pursuant to 28 U.S.C. § 2241 (Doc. 1, filed January 17, 2012). Petitioner is a United States Bureau of Prisons ("BOP") inmate currently confined at the Federal Correctional Complex in Coleman, Florida. Petitioner claims that his substantive due process rights were violated during the collection of his urine sample at a random drug test which resulted in a finding that he had committed the prohibited act of using narcotics (Doc. 1; Doc. 10).

    After reviewing the pleadings filed in this case, including documents related to Petitioner's disciplinary hearing, the Court concludes that Petitioner is not entitled to habeas relief.

**I.**    **Background and Procedural History**

    On August 12, 2010, Petitioner was ordered to provide a urine sample for a random drug test (Doc. 1 at 7; Doc. 9 at 2). The sample was sent to National Toxicology Laboratories where it tested positive for the presence of Cannabinoids (Doc. 9 at 2). Petitioner's medical

records were reviewed, and it was determined that he did not take any prescription medicine which could result in a positive reading (Doc. 9-1). An incident report was written for violation of the BOP prohibition on the use of narcotics (Doc. 1; Doc. 9-1 at 7).

The charges were investigated, and Petitioner declined to make a statement.[1] A hearing commenced on October 25, 2010 (Doc. 9-1 at 14). The officer who had collected the urine sample from Petitioner provided a written statement:

> The way I handled the UA's is as such, One inmate enters the room with me. I show the inmate that the package is new and sealed, then open the package in front of the inmate and hand him the cup. I ask the inmate to try and fill the cup to the desired line on the cup. Once the inmate has [urinated] in the cup, I close the sample in front of the inmate and do not let the inmate leave until a reading has showed on the sample cup, regardless of its positive or negative. Once I receive a reading the inmate is free to leave. Then I will call for the next inmate. I do not allow more than one inmate in the room. If the reading showed positive, then the sample is placed in the appropriate spot in the LT's office for further testing.

Id. at 15-16. The discipline hearing officer determined that, based upon the national toxicology laboratory report, chain of custody form, memo from the health services department, and the written report, Petitioner had committed the prohibited act of using narcotics. Id. Petitioner was sanctioned with thirty days of

---

[1] Petitioner asserts that he did indeed make a statement by stating that he was "not guilty, it's some kind of mix up or handled improperly." (Doc. 1 at 12).

disciplinary segregation, a 180-day loss of visiting privileges, and 180 days of "immediate family only" visiting privileges. Id. at 16. Petitioner now argues that the violation may have also affected his future eligibility for parole (Doc. 1 at 9).[2]

Subsequent to the hearing, Petitioner sought to obtain video-tape surveillance from the urine collection process. Petitioner asserts that he received no response to the request, but in the denial of his first appeal, the regional director noted:

> You contend review of the videotape of the incident would exonerate you. In this case, the incident was witnessed by a staff member. Thus, review of the incident via a videotape was not necessary. You have offered no information to indicate the reporting officer who witnessed the incident would have any reason to fabricate the incident. Further you have offered no information concerning how his eyewitness account of the incident could have been misinterpreted. It is further noted you never asked to review any videotape during the discipline process. The time to raise a defense of the charges against you is at the time of your hearing.

(Doc. 1 at 14). The administrator of the national inmate appeals agreed that Petitioner had not provided substantive evidence refuting the hearing officer's finding and that there was no need to review video surveillance. Id. at 15.

---

[2] Respondent has attached to the response a SENTRY Printout, Public Information Data, showing that Petitioner is serving a life sentence and that his next parole hearing date is set for March 2017 (Doc. 9-1 at 3-4).

Petitioner filed the instant petition on January 17, 2012 (Doc. 1). Petitioner argues that the United States Supreme Court has never articulated a standard of proof in prison disciplinary procedures and that due process was violated in his case because the collecting officer did not strictly adhere to the Bureau of Prison's protocol for the chain of custody and collection of urine samples. Id. at 11-12.

Respondent filed a response opposing the petition and attached supporting exhibits (Doc. 9; Doc. 9-1). Respondent argues that the due process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974) and Superintendent v. Hill, 472 U.S. 445 (1985) were not violated because the evidence was "adequate to support the determination that Petitioner committed the prohibited act as charged." (Doc. 9 at 6-8).

In his reply, Petitioner argues that he did not use drugs and that there must have been some mistake or mishandling of his urine sample (Doc. 10 at 1-2).

**II. Standard of Review**

"The federal courts cannot assume the task of retrying all prison disciplinary disputes." Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981). Instead, when reviewing claims involving prison disciplinary proceedings, a federal court is limited "to determin[ing] whether an inmate receive[d] the procedural protections provided by Wolff and whether 'some evidence' exists

which supports the hearing officer's determination." Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994).

In Wolff v. McDonnell, the United States Supreme Court set forth the minimum due process requirements to be accorded prisoners facing disciplinary proceedings that could result in the loss of a protected liberty interest: (1) the inmate must receive written notice of the charges at least 24 hours in advance of the proceeding; (2) the inmate "should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) the inmate must be given "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." Wolff, 418 U.S. at 564–66 (internal quotations omitted).

**III. Analysis**

Petitioner specifically states that he is "not claiming that his due process rights were violated at the disciplinary hearing[.]" (Doc. 10 at 1).[3]  Rather, Petitioner maintains that the regulations concerning the collection and chain of custody for urine samples were not followed in his case. Id. Specifically, Petitioner asserts that the staff member collecting the sample broke the chain of custody by placing a partial sample of Petitioner's urine on the shelf until Petitioner could provide the rest.  Petitioner further

---

[3] Accordingly, this Court will not address whether the BOP satisfied the three Wolff requirements for procedural due process.

- 5 -

asserts that the staff member did not seal the sample in front of him (Doc. 1 at 7). Petitioner claims that the staff member's failure to follow urine collection protocol rendered the sample unreliable and that the unreliable sample could not satisfy the government's burden of proof of Petitioner's guilt of the disciplinary violation. Id. at 10-13.

Petitioner attached to his petition a copy of the "Standard Procedures for Collecting Urine Surveillance Samples" (Doc. 1 at 19). Petitioner claims that the specimen bottle used to collect his urine sample was not kept under "direct staff observation and control at all times" as was mandated by the procedures and that the collecting officer had Petitioner sign the chain of custody form prior to taking the full sample, contrary to procedure. Id. at 8, 19. Even if regulations were not followed to the letter during the collection of Petitioner's urine, prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." Sandin v. Conner, 515 U.S. 472, 481–82 (1995). The adoption of procedural guidelines does not automatically give rise to a liberty interest; thus, the failure to follow a prison directive or regulation does not give rise to a federal claim if constitutional minima are met. See Sharma v. Drug Enforcement Agency, 511 F. App'x 898 (11th Cir. 2013) (even where a governmental entity fails to follows its own regulations providing for procedural safeguards, it is not a denial

of due process if the individual was provided with adequate notice such that his rights were not prejudiced); Godlock v. Fatkin, 84 F. App'x 24, 30 (10th Cir. 2003) ("Petitioner does not have cognizable claim for federal habeas relief based solely on the failure of [the correctional facility] to follow particular regulations and directives"); United States v. Caceres, 440 U.S. 741, 751–52 (1979) (mere violations of agency regulations do not raise constitutional questions); Caruth v. Pinkney, 683 F.2d 1044, 1052 (7th Cir.1982) (The failure of correctional officials to comply with directives of a prison regulation "does not amount to a violation of constitutional magnitude.").

Moreover, upon review of the record, the Court concludes that Petitioner's claim that the procedure used to collect his urine sample was constitutionally infirm is unavailing. Although Petitioner now asserts that the collecting officer did not seal the sample in front of him, Petitioner does not dispute that he signed a Chain of Custody for Drug Analysis form, certifying that he provided the urine sample, that the specimen was sealed in his presence, and that the information on the form and the label was correct (Doc. 1 at 14). He cannot now claim that he failed to read that which he signed.

Petitioner also asserts that the use of a low standard of proof in prison disciplinary hearings violates due process because urine sample tests have a special risk of unreliability (Doc. 1 at 11-12).

To the extent Petitioner argues that the standard of proof in prison disciplinary proceedings is greater than "some evidence," such argument is not supported by relevant case law.  Supreme Court and Eleventh Circuit precedent is clear that this Court must uphold a disciplinary decision if "some evidence" exists to support a hearing officer's determination that a disciplinary infraction occurred. Superintendent v. Hill, 472 U.S. at 455.  The Hill court determined:

> This ["some evidence"] standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.... Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

Id. at 455-46 (citations omitted).

In the instant case, the hearing officer relied upon the written statement of the collecting officer and Petitioner's signature stating that he had witnessed the officer properly seal the sample in his presence to conclude that the sample tested belonged to Petitioner (Doc. 1 at 17-18).  The hearing officer's report further stated that "based upon the national toxicology laboratory report,

chain of custody form, memo from the health services department, and the written report, the DHO finds you committed the prohibited act of use of any drugs." Id. at 18.  The evidence was sufficient to meet the "some evidence" standard.  Thus, the Court finds that the petition fails to state a due process claim.

ACCORDINGLY, it is hereby **ORDERED:**

1. The Petition for Writ of Habeas Corpus is **DENIED**.

2. The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.**  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations and internal quotation marks omitted).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___15th___ day of July, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4 7/15/14
Copies: Shawn Maciel
Counsel of Record